Case 4:23-cv-04585   Document 31   Filed on 11/12/24 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
November 12, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, as subrogee of AT&T Services, Inc., § § § § |  |  |
| *Plaintiff,* § |  |  |
| VS. § | CIVIL ACTION NO. 4:23-cv-4585 |  |
| § |  |  |
| WHITEHORSE FREIGHT LLC and CARGO TEAM SOLUTIONS LLC § § § |  |  |
| *Defendants.* § |  |  |

## ORDER

Pending before this Court is Whitehorse Freight LLC's ("Defendant") Motion to Dismiss Pursuant to FRCP 12(b)(6). (Doc. No. 20). Indemnity Insurance Company of North America ("Plaintiff") responded in opposition, (Doc. No. 23), and Defendant replied in support, (Doc. No. 25). Defendant also supplemented its motion. (Doc. No. 29). Plaintiff did not file a response to the supplement, and the time for doing so has passed, making the motion ripe for ruling. Having considered the motion and the relevant pleadings, the Court **DENIES** the Motion. (Doc. No. 20).

### I.  Background

This case arises from an interstate transportation of a computer server. Around May 2023, AT&T arranged for Defendant "and/or Cargo Team"[1] to carry a computer equipment from Mesa, Arizona, to Allen, Texas. (Doc. No. 18 at 4). According to Plaintiff, the server was damaged due to the negligence of Defendant "and/or Cargo Team." (*Id.*). As a result, AT&T allegedly suffered damages in the amount of $288,560.27, for which it filed a claim with Defendant. (*Id.* at 5, 7). Now, Defendant, as subrogee of AT&T, Defendant seeks to recover that amount from Defendant

---

[1] Cargo Team Solutions LLC is a co-defendant in this case but did not join Defendant in this Motion to Dismiss.

and Cargo Team under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §§ 14706 *et seq.* (*Id.* at 8).

In lieu of an answer, Defendant has filed this Motion to Dismiss. (Doc. No. 20). In it, Defendant argues that Plaintiff fails to state a claim for which relief can be granted because Defendant has never been a carrier and, thus, is not subject to the Carmack Amendment. (Doc. No. 20-1 at 8–9).

## II.   Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual

allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III. Analysis

Defendant's Motion to Dismiss has two main arguments: (1) that it is not a carrier and, thus, is not liable under the Carmack Amendment—the only cause of action brought by Plaintiff; and (2) any other state law claims, should Plaintiff seek leave to amend its complaint, are preempted by the Carmack Amendment. *See* (Doc. No. 20). Given that Plaintiff has not sought leave to amend its complaint and that the Court denies Defendant's motion, the Court does not reach the preemption issue. Instead, it turns to whether Defendant is a carrier for the purposes of this suit.

The Carmack Amendment provides, in part, "[a] carrier . . . [is] liable . . . for the actual loss or injury to the property caused by (A) the receiving carrier, (B) delivering carrier, or (C) another carrier over whose line or route the property is transported." § 14706(a)(1). It also provides various definitions. A "carrier" means a "motor carrier, a water carrier, and a freight forwarder." § 13102(4). A "motor carrier" means "a person providing motor vehicle transportation for compensation." § 13102(14). A "freight forwarder" means:

> a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business—
> (A)    assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;
> (B)    assumes responsibility for the transportation from the place of receipt to the place of destination; and
> (C)    uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.

§ 13102(8). Finally, as relevant here, a "broker" means:

> a person, *other than a motor carrier or an employee or agent of a motor carrier*, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by

3

solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

§ 13102(2) (emphasis added).

Defendant argues that it is not, nor has it ever been, a carrier. In support of this contention, Defendant points to the Federal Motor Carrier Safety Administration's ("FMCSA") records, which show that it is registered as a freight broker, not a common or contract carrier, owns zero "power units" (*i.e.*, trucks), and employs no drivers. (Doc. Nos. 20-2, 20-3, and 20-4). On the other hand, Plaintiff seems to argue that Defendant was either a motor carrier or a freight forwarder.[2] *See* (Doc. No. 23) ("Whitehorse appears to meet the definition of a 'freight forwarder' under 49 U.S.C. § 13102(8) . . . In addition, in the carriage document, Whitehorse clearly identified itself as the *carrier* for the shipment at issue." (emphasis in original)).

While the FMCSA records fall outside of Plaintiff's complaint, the Court may judicially notice them. At the motion to dismiss stage, "a district court must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motion to dismiss, in particular, documents incorporated by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). A court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Matters of public records, like the FMCSA records, are "clearly" judicially noticeable. *Funk*, 631 F.3d at 783 ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.")

---

[2] Defendant argues that "Plaintiff for the first time in its Opposition suggests that Whitehorse could be liable as a freight forwarder." (Doc. No. 25 at 3). While it is true that Plaintiff's Complaint never specifically characterizes Defendant as a "freight forwarder," but rather as a "carrier," the statutory definition of "carrier" encompasses "freight forwarders." *See* § 13102(4). Nevertheless, as explained below, the Court finds that Plaintiff has stated plausible grounds for this Court to infer that Defendant was a motor carrier, even if not a freight forwarder.

4

(quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)). Thus, the Court may properly consider them.

Defendant is correct that the public records indicate that it is licensed as a broker and not as a carrier; however, that is not dispositive. First, nowhere in the statutory definition is the requirement that the purported freight forwarder be licensed as one or that it owns trucks and hires drivers. While the licensing requirement may fulfill another statute or regulation, it is not a barrier to finding that Defendant is indeed a freight forwarder. Further, the definition of freight forwarder specifically contemplates that the entity would "use[] for any part of the transportation a carrier subject to jurisdiction under this subtitle," and thus, would not need its own equipment or personnel. § 13102(14).

Second, while courts in this Circuit have not addressed this issue, Plaintiff points to, and the Court has found, numerous authorities from other Circuits that have held that licensure, equipment, or personnel is not dispositive. For discussions of licensure, *see, e.g., Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc.*, No. 09-cv-2365(PGG), 2011 WL 671747, at *4 (S.D.N.Y. Feb. 18, 2011) ("The fact that an entity is a licensed broker but is not a licensed motor carrier is not dispositive of the issue of liability under the Carmack Amendment." (internal quotation marks omitted)); *Delta Research Corp. v. EMS, Inc.*, No. 04-60046, 2005 WL 2090890, at *5 (E.D. Mich. Aug. 29, 2005) ("The fact that S.K. Rigging [the purported carrier] is not a regulated interstate motor carrier is not dispositive of the issue of liability under the Carmack Amendment."); *Phoenix Assur. Co. v. K-Mart Corp.*, 977 F. Supp. 319, 326 (D.N.J. 1997) ("Indeed, Mo-Ark's Registration as a broker and Mo-Ark's failure to register as a 'carrier' are not dispositive of Mo-Ark's true identity."); *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, 767 F. App'x 284, 285–86 (3d Cir. 2019) (affirming the district court's holding that the defendant "held itself out as a

carrier and was therefore liable for the damages" even though it "possessed a broker's license and not a motor carrier's license."); *Auray v. Delivery by Delivery, Inc.*, No. 6:23-03155-HMH, 2023 WL 5651868, at *3 (D.S.C. Aug. 31, 2023) (holding, at the motion to dismiss stage, that "the fact that an entity is registered as a broker is not dispositive of its 'true identity.'"); *Ensco, Inc. v. Weicker Transfer & Storage Co.*, 689 F.2d 921, 925 (10th Cir. 1982) ("A carrier's status as a common carrier is determined not by reference to its authority but rather by reference to what it holds itself out to be.").

For discussions of equipment and personnel, *see, e.g., Custom Cartage, Inc. v. Motorola, Inc.*, No. 98-cv-5182, 1999 WL 965686, *8 (N.D. Ill. Oct. 15, 1999) ("[O]wnership of the vehicles used to transport the goods is not dispositive of whether Custom was providing transportation or selling the transportation of another motor carrier."); *Tryg Ins.*, 767 F. App'x at 285–86 (affirming the district court's finding that the defendant was a carrier even though it "did not own trucks or other equipment to transport cargo.").

Indeed, these cases are in accordance with the statute's silence on the licensing, equipment, and personnel requirement and its repeated references to what the entity holds itself out to be. *See* § 13102(2), (8). Moreover, Defendant does not point to the Court to any contrary authority or explain why this Court should diverge from these cases and read into the statute the licensure, equipment, or personnel requirement. Thus, the FMCSA records are not dispositive of Defendant's status.

Consequently, the Court turns to Plaintiff's First Amended Complaint, (Doc. No. 18), to determine if it has pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570. Plaintiff has done so. It alleges that Defendant issued a clean bill of lading, (Doc. No. 18 at 3, 4); undertook interstate carriage, (*id.* at 3, 5); agreed to safely carry the

6

cargo to its destination for certain consideration, (*id.* at 3, 4); "arranged" the carriage of the cargo, (*id.* at 4); picked up the cargo, (*id.*); and undertook interim storage, inspection, and handling responsibilities, (*id.* at 3, 5). This alleged conduct satisfies the statutory definition of a "motor carrier"—"a person providing motor vehicle transportation for compensation." § 13102(15); *see also* § 13102(23)(B) ("The term 'transportation' includes—(B) services related to that movement [of passengers or property], including *arranging for*, receipt, *delivery*, elevation, transfer in transit, refrigeration, icing, ventilation, *storage*, *handling*, packing, unpacking, and interchange of passengers and property." (emphasis added)). Thus, Plaintiff has alleged sufficient facts to survive a motion to dismiss.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Dismiss is **DENIED**. (Doc. No. 20).

Signed on this 12th day of November 2024.

Andrew S. Hanen
United States District Judge